Filed 6/30/26  SM 10000 Property v. Pecci CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION EIGHT

| | |
|---|---|
| SM 10000 PROPERTY, LLC,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CRISTINA PECCI,<br><br>    Defendant and Appellant. | B337813<br><br>(Los Angeles County<br>Super. Ct. No. 21SMCV02005) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Edward B. Moreton, Jr., Judge.  Affirmed.

Law Offices of Roger Franklin and Roger Franklin for Defendant and Appellant.

Lorber, Greenfield, and Olsen, Thomas F. Olsen and Daniel E. Ishu for Plaintiff and Respondent.

_____

Cristina Pecci, Justin Ligeri, and Ligeri's company, Cheyenne Brands LLC, rented a property from SM 10000 Property, LLC. Unbeknownst to Pecci, Ligeri forged Pecci's name to a lease renewal and remained in possession of the property long after the end of the original lease term. SM 10000 Property successfully sued for breach of contract, and Pecci appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2020, SM 10000 Property entered into a one-year lease for a property in Los Angeles with Pecci, Ligeri, and Cheyenne Brands. Pecci and Cheyenne Brands were listed as the "Resident" and Ligeri was listed under "Minor Resident(s) and/or Other Occupants," but Pecci, Cheyenne Brands, and Ligeri all signed the lease. The lease ran through January 24, 2021, and it provided that following this termination date, the lease would continue on a month-to-month basis.

Subsequently, a six-month lease renewal was prepared for the property. Ligeri forged Pecci's signature on the lease renewal. Ligeri remained in possession of the property until February 9, 2023, but failed to make full rental payments.

In December 2021, SM 10000 Property filed a complaint for breach of contract against Pecci, Ligeri, and Cheyenne Brands. With the court's permission, in July 2022 SM 10000 Property filed a first amended complaint changing the case from breach of contract to unlawful detainer.

In November 2022, Ligeri and SM 10000 Property entered into a stipulated agreement allowing Ligeri to remain at the property until January 31, 2023. The parties agreed that in the event Ligeri failed to fully vacate the property by that date, the trial court could summarily issue an order of unlawful detainer and award possession of the property to SM 10000 Property on an

ex parte basis.  Pecci was not a party to the agreement because she did not claim a right of possession and alleged she never lived at the property.

The stipulated agreement authorized SM 10000 Property to seek to amend their complaint to state claims for damages instead of unlawful detainer.  On May 17, 2023, SM 10000 Property filed a second amended complaint asserting a breach of contract claim against the three defendants.

A bench trial was conducted on December 11, 2023.  Pecci appeared and provided evidence and argument.  Ligeri did not appear at trial; Cheyenne Brands was in default and did not appear.  The trial court issued findings of fact, conclusions of law, and a statement of decision on February 9, 2024.  The court found the defendants had breached the lease by failing to pay rent and other payments due, and it awarded damages under the lease as well as prejudgment interest, all of which it designated as joint and several.  Pecci appeals.

**DISCUSSION**

I.  **Validity of Lease Renewal**

In the trial court Pecci's argument was twofold.  She argued that the lease was superseded by the lease renewal.  Then she followed up by contending the lease renewal could not be enforced against her because her signature had been forged, but it could be enforced against Ligeri and Cheyenne Brands.  The trial court observed that Pecci provided no authority supporting the principle that a forged document could be partially void; i.e., not enforceable against the person whose signature was forged but enforceable against the other signatories.  Citing *Schiavon v. Arnaudo Brothers* (2000) 84 Cal.App.4th 374, at pages 379–380

3

(*Schiavon*) for the principle that a forged document is void *ab initio*, the court concluded the forgery rendered the lease renewal void in its entirety, and therefore the original lease controlled.

On appeal, Pecci again asserts the lease renewal was void only as to herself. She argues *Schiavon* and *Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36 (*Wutzke*), which states the same principle, are inapplicable because neither case involved a lease or a contract. Pecci contends the principle that forged documents are void *ab initio* only applies to instruments through which an interest in real property is passed, and she contends the lease renewal did not seek or pass any interest in real property.

However, a lease conveys a real property interest to the tenant. (Code Civ. Proc., § 481.203 [" 'Real property' includes any right in real property, including . . . a leasehold interest in real property"]; 10 Miller & Starr, Cal. Real Estate (4th ed. 2025) § 34:2 [tenant with lease has a real property interest in the premises]; *Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134, 172 ["[a] lease is an agreement that grants to the tenant the rights of exclusive possession and use of real property for a specific period of time and vests exclusive possession of the leasehold in the lessee against all persons, including the owner of the fee. It creates an *estate* in real property"].)

Pecci contrasts *Schiavon* and *Wutzke* with this case on the ground that in those cases, the victim of the forgery sought to have the forged deed declared void, while here, SM 10000 Property, "whose conduct allowed the forgery," tried to "void the Lease Renewal so that the victim of the forgery, Pecci, would become a holdover tenant on the Original Lease and have a

4

judgment entered against her." This assertion is not supported by factual or legal analysis or any citations to the record. The " 'judgment is presumed to be correct, and it is appellant's burden to affirmatively show error. [Citation.] To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, "it is deemed to be without foundation and requires no discussion by the reviewing court." ' " (*In re M.V.* (2025) 109 Cal.App.5th 486, 518.)

## II. __Paragraph 31__

The trial court noted in its ruling that Pecci had provided no authority that a forged document could be partially void, only against the party whose signature was forged. Pecci takes issue with this statement, claiming paragraph 31 of both the lease and the renewal, a severability clause, is the authority that supports her view.

Paragraph 31 of both the lease and the renewal states, "If any part of this Lease shall be in conflict with the law, that part shall be void to the extent that it is in conflict, but shall not invalidate this Lease or affect the validity or enforceability of any other provision of this Lease."

Pecci reasons that because forgery is in conflict with the law, the "implication" of paragraph 31 is that the forgery "voids the Lease Renewal only as to Pecci." According to Pecci, this paragraph "validates and confirms that the forged Lease Renewal must only be void as to Pecci and that the forgery did not invalidate the entire Lease Renewal or affect the validity or enforceability."

5

Pecci fails to offer any reasoned argument or legal authority in support of her view that a severability clause can supersede California law providing that a forged document is void *ab initio* and a nullity. (*Schiavon, supra,* 84 Cal.App.4th at pp. 379–380; *Wutzke, supra,* 151 Cal.App.3d at p. 43.) Instead, she makes a series of assertions—she raised paragraph 31 in her trial brief but SM 10000 Property did not address its "implication"; SM 10000 Property's property manager did not mention paragraph 31 in her trial testimony; and paragraph 31 was not mentioned in the trial court's ruling. She then claims "a plain reading" of the provision "validates Pecci's argument that the Lease Renewal is void only as to her." These conclusory arguments are inadequate to demonstrate error. "Appellants must make sufficient arguments to establish trial court error, '[w]e will not develop [appellants'] argument for them.' " (*Pacific Bell Telephone Co. v. County of Placer* (2025) 111 Cal.App.5th 634, 640.)

III. **Judicial Estoppel**

Judicial estoppel precludes a party from gaining an advantage by taking one position, then seeking a second advantage by taking an incompatible position. (*Regents of University of California v. Superior Court* (2013) 222 Cal.App.4th 383, 408.) It applies when " '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud or mistake.' " (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986–987.)

6

The trial court rejected Pecci's argument that SM 10000 Property was precluded by the doctrine of judicial estoppel from claiming the lease renewal was unenforceable. The court found the third and fifth conditions for judicial estoppel were not met. The court acknowledged that in earlier complaints, SM 10000 Property took the position that the lease renewal was enforceable; however, the court found SM 10000 Property had not been successful in asserting that position because the court had never adopted it. Moreover, the court found SM 10000 Property had taken the position that the lease renewal was enforceable as a result of ignorance or mistake, because SM 10000 Property did not know at the time it took that position that Pecci's signature on the lease renewal was forged.

Pecci argues the court erred by failing to apply judicial estoppel. " '[J]udicial estoppel *is an equitable doctrine*, and its application, even where all necessary elements are present, is discretionary.' " (*Miller v. Bank of America, N.A.* (2013) 213 Cal.App.4th 1, 9–10.) " 'The determination of whether judicial estoppel can apply to the facts is a question of law reviewed de novo, i.e., independently [citations], but the findings of fact upon which the application of judicial estoppel is based are reviewed under the substantial evidence standard of review. [Citations.] [¶] Even if the necessary elements of judicial estoppel are found, because judicial estoppel is an equitable doctrine [citations], whether it should be applied is a matter within the discretion of the trial court. [Citations.] The exercise of discretion for an equitable determination is reviewed under an abuse of discretion standard.' " (*Id*. at p. 10.)

"However convoluted the facts, or complex the issues, the standard of review is the compass that guides the appellate court to its decision.  It defines and limits the course the court follows in arriving at its destination.  Deviations from the path . . . leave writer and reader lost in the wilderness." (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.)  Accordingly, " '[a]rguments should be tailored according to the applicable standard of appellate review.'  [Citation.]  Failure to acknowledge the proper scope of review is a concession of a lack of merit." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.)  Pecci's entire opening brief fails to comport with this rule.  We have overlooked this deficiency where possible, but Pecci's disregard for the multiplicity of standards of review in the judicial estoppel context has resulted in ineffective arguments untethered to the analysis this court must perform and insufficient to overcome the presumption of correctness. " 'When an appellant fails to apply the appropriate standard of review, the argument lacks legal force,' and the appellant 'fails to show error in the judgment.' " (*Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 597.)

We note that although the heading of this portion of Pecci's appellate argument identifies the argument as one concerning judicial estoppel, she repeatedly asserts that SM 10000 Property made judicial admissions.  The trial court ruled the doctrine of judicial admission did not apply and that the original and first amended complaints were superseded by the second amended complaint.  Pecci again fails to make a cognizable argument tailored to the standard of review to demonstrate error.  She asserts the court and SM 10000 Property "miss[ed] the point that the defense argued: The Lease Renewal is only void as to Pecci.

See Paragraph 31. The Trial Court and [SM 10000 Property] ignored Paragraph 31 and alleged, without explanation, new facts inconsistent with the allegations of the earlier pleadings." This argument retreads issues already addressed about partial voidness and the severability clause, makes an incomprehensible claim that the trial court made factual allegations, fails to identify any error in the trial court's ruling that the doctrine of judicial admissions did not apply, and presents no meaningful legal analysis. Pecci has not demonstrated error.

We are unable to identify any other cognizable arguments in this portion of Pecci's brief. Many of her contentions are presented in a manner more appropriate to advocacy before a trial court making findings of facts and conclusions of law in the first instance rather than to an appellate court; indeed, Pecci repeatedly anticipates what "Respondent may argue" instead of presenting arguments tailored to the standard of review to demonstrate trial court error. " ' " 'Instead of a fair and sincere effort to show that the trial court was wrong, appellant's brief is a mere challenge to respondents to prove that the court was right.' " ' " (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115–1116.) Additionally, many of Pecci's factual assertions are unsupported by references to the record, in violation of California Rules of Court, rule 8.204(a)(1)(C), which requires litigants to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where that matter appears." "Statements of fact that are not supported by references in the record are disregarded by the reviewing court." (*McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 947 (*McOwen*).)

## IV. **Holdover Tenancy**

Pecci argues no holdover tenancy was ever created because SM 10000 Property and Cheyenne Brands entered into the lease renewal, which took effect immediately upon the termination of the original lease. As discussed above, however, the trial court ruled that the lease renewal was void *ab initio*, and Pecci has failed to demonstrate any error in that ruling. As Pecci's holdover tenancy argument is premised on the lease renewal's validity, it presents no issues for this court to resolve.

## V. **Civil Code Section 3543**

Civil Code section 3543 provides, "Where one of two innocent persons must suffer by the act of a third, the person, by whose negligence it happened, must be the sufferer." Pecci acknowledges SM 10000 Property was innocent of the forgery, but she contends its negligent deviation from its e-mail policies allowed Ligeri's forgery of Pecci's signature on the lease renewal to occur, and therefore, SM 10000 Property must be the "sufferer."

The trial court rejected this argument, ruling, "Pecci . . . argues that [SM 10000 Property] failed to follow its internal procedures in requiring tenants who want to change their email address to use their old email address to advise Plaintiff of a new email address. The failure to follow this procedure allowed Ligeri to supply a fake email address for Pecci, which he then used to forge Pecci's signature on the Lease Renewal. But this internal procedure is not part of the lease, which is a fully integrated contract. 'The parol evidence rule generally prohibits the introduction of any extrinsic evidence, whether written or oral, to vary, alter or add to the terms of an

10

integrated written instrument.' [Citation.] Accordingly, [SM 10000 Property] had no contractual obligation to follow its internal procedures. [¶] In any event, whether [SM 10000 Property] followed its entire procedure is immaterial as the same result would follow. In the absence of the Lease Renewal, the Original Lease would still control, and there would have been a month-to-month tenancy."

"Judgments and orders are presumed correct on appeal, and the appellant bears the burden of overcoming that presumption by affirmatively demonstrating reversible error." (*Forrest v. Department of Corporations* (2007) 150 Cal.App.4th 183, 194, disapproved in part on another ground as stated in *Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1172, fn. 3.) Pecci's argument on appeal does not acknowledge the trial court's ruling on this issue, much less demonstrate any respect in which it was erroneous. Pecci has failed to meet her burden on appeal.

Pecci's next two "arguments" consist of a heading followed by the phrase, "See Exhibit 7." This is insufficient to present an issue for appellate review. (See *In re M.V.*, *supra*, 109 Cal.App.5th at p. 518 [appellant must present meaningful legal analysis supported by citations to authority and facts in the record that support the claim of error; points asserted without argument and supporting authority need not be discussed by the reviewing court].)

## VI. **Mutual Assent**

Pecci argues the trial court's acceptance of a stipulation between Ligeri and SM 10000 Property regarding when Ligeri would surrender the property demonstrates there was mutual assent and a valid lease renewal without Pecci as a tenant. She disagrees with the court's statement, made in the context of

11

evaluating whether judicial estoppel applied, that the court did not adopt any position on the lease renewal when it accepted a stipulation between Ligeri and SM 10000 Property over when Ligeri would vacate the premises.

Pecci argues the court "issue[d] the '*Order of unlawful detainer*' based upon the Lease Renewal and therefore adopted the Lease Renewal as valid." She describes the stipulation as "an Order to Vacate based upon the Lease Renewal" and claims the court signed "an Order based upon the Lease Renewal and Stipulation." She concludes that by this action, "the court adopted the Lease Renewal as binding, with mutual assent, and enforceable against the only tenant, Cheyenne Brands, and Ligeri its guarantor."

We conclude Pecci's assertions are not supported by the stipulation and order. The order was not an order of unlawful detainer; rather it reflected that Ligeri and SM 10000 Property had agreed upon a future date by which Ligeri and any other occupants would vacate the property. The stipulation and order mentioned unlawful detainer only as a consequence the parties agreed upon to address the possibility that Ligeri would not comply with the parties' agreement: Ligeri stipulated that if he and any other occupants did not vacate the property by the agreed-upon date and time, the court could summarily issue an order of unlawful detainer on an ex parte basis. Neither the stipulation nor the order mentioned the lease renewal, nor did the court state it was basing its order "upon the Lease Renewal and Stipulation." In the order pursuant to the stipulation, the court made no findings concerning the lease renewal's validity, the presence or absence of mutual assent, or whether the lease renewal could be enforced against Cheyenne Brands. Pecci has

12

not demonstrated the trial court erred in concluding it had not adopted any position on the lease renewal by accepting the parties' stipulation and signing the order executing it.

Pecci argues the trial court could not have accepted the stipulation and issued an order to vacate based on a void lease, and as the original lease was not before the trial court at the time, the court's acceptance of the stipulation and issuance of the requested order "must have been based exclusively on a valid Lease Renewal for the only tenant, Cheyenne Brands. There is no other explanation." But there is an obvious alternative explanation: in signing the order, the court was executing two parties' agreement to partially resolve the litigation, not silently making rulings on the merits. These parties had agreed on a way to solve the case's unlawful detainer issues, as well as a prospective enforcement mechanism—as the court's order noted, the stipulation, if honored, mooted the issue of unlawful detainer. No ruling on the validity of the lease renewal was requested or required. Pecci has not demonstrated the court made any ruling on the validity of the lease renewal by accepting the parties' stipulation and signing their proposed order.

Pecci states she had filed an answer denying she had signed the lease renewal three months before the order pursuant to the stipulation was filed. This statement is not supported by any citation to the record, and we disregard it. (*McOwen*, *supra*, 153 Cal.App.4th at p. 947.) She points out that the stipulation stated she was not a signatory to the stipulation because she did not claim a right of possession and alleged she never lived at the property. She claims she could not sign the "Stipulation to the Lease Renewal because she was never a party, tenant, or signatory." The stipulation regarding Ligeri's move out is clearly

13

not a stipulation to a lease renewal, and we are not aware of any "Stipulation to the Lease Renewal" in the record, nor does Pecci offer any citation to the record to allow us to locate such a document. Pecci concludes, "The tenant and the landlord did have mutual assent as the signatories." This conclusory assertion does not establish error in the court's finding there was no mutual assent to the renewal because Pecci did not agree to it.

Pecci alleges SM 10000 Property's "alleged condition that Pecci's signature on the lease renewal was required was not in either lease agreement and was contrary to the lease provisions." (Capitalization and boldface omitted.) We are at a loss to understand how lease agreements that by their own terms are between SM 10000 Property as landlord and Cheyenne Brands and Pecci as the resident could possibly not require Pecci's signature or how requiring her signature could contradict lease provisions, and Pecci's presentation does not clarify or support such a proposition.

Pecci acknowledges the testimony that Ligeri did not financially qualify to rent the property without Pecci, but claims the property manager testified "that neither the Original Lease nor the Lease Renewal contained any such provision regarding said requirement necessary to receive approval to become a tenant at [the] apartment complex." We disregard this factual assertion because it is not supported by any citation to the record. (*McOwen*, *supra*, 153 Cal.App.4th at p. 947.) Pecci sets forth the integration clause of the lease and renewal, repeats her claim that there was nothing in either document requiring her signature as a tenant, notes that SM 10000 Property accepted rent payments from Ligeri during what she describes as "the period of the Lease Renewal," claims SM 10000 Property

14

admitted the validity of the renewal in its first amended complaint, and alleges it evicted Ligeri and his company via the stipulation. She concludes this "conduct supports the finding that the Lease Renewal was both binding and enforceable with the only tenant being Cheyenne Brands." There was no finding, however, that the renewal was binding and enforceable with Cheyenne Brands as the only tenant. In this argument, Pecci does not "show how [her assertions] apply to demonstrate error in the trial court's actions. '[F]ailure of an appellant in a civil action to articulate any pertinent or intelligible legal argument in an opening brief may, in the discretion of the court, be deemed an abandonment of the appeal justifying dismissal.' [Citation.] Even if we do not deem the appeal abandoned, we find it lacks merit." (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 205.)

VII. **Application of Funds**

Pecci argues the residential ledger, Exhibit 7, demonstrates that six payments by Ligeri, totaling $31,276.14, were "unaccounted for" by SM 10000 Property. She also contends SM 10000 Property transferred the security deposit without her permission to a lease renewal account. Other than noting that the six payments are listed on Exhibit 7, Pecci provides no factual or legal argument or citations to the record to support her claim that funds were not accounted for or were transferred without her permission. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

15

Pecci next claims she "only asked the court to apply" the allegedly unaccounted-for funds and the security deposit to the lease account, and she complains the court did not do so despite her request in her trial brief. She asserts the trial court held that her "claim to the security deposit 'should have been raised in a compulsory cross-complaint.'" (Italics omitted.) She points out that cross-complaints are not permitted in unlawful detainer actions and claims she was not seeking affirmative relief or asserting an affirmative defense. However, it is clear from the trial court's ruling that Pecci was arguing she was entitled to a statutory penalty of up to twice the amount of the $26,400 security deposit pursuant to former Civil Code section 1950.5, subdivision (g)(1). It is this claim that the court ruled should have been, but was not, raised in a compulsory cross-complaint or as an affirmative defense. Additionally, Pecci has not demonstrated any relationship between the trial court's ruling that her claimed entitlement to a statutory penalty should have been raised by cross-complaint and the alleged error that is the topic of this section of her brief—the alleged failure to account for $31,276.14 and the allegedly unauthorized transfer of security deposit funds to a lease renewal account. Pecci has not demonstrated error.

## VIII. **Former Civil Code Section 1950.5, Subdivision (g)(1)**

Pecci argues that under former Civil Code section 1950.5, subdivision (g)(1), "[w]ithin 21 days after the termination of the Original Lease on January 24, 2021, [SM 10000 Property] was statutorily required to give the tenants an itemized written statement of the basis for the security, the amount received as security, and the disposition of the security (i.e. how [SM 10000 Property] applied it to rent, repairs, or cleaning) and refund the

16

balance if any."  She claims the operative complaint failed to plead compliance with this law and no documentary evidence of compliance was entered into evidence at trial, then presents two paragraphs of factual and legal arguments that are supported by only one general citation to a trial exhibit and no legal authority. She concludes by stating that SM 10000 Property's conduct "may show a bad faith retention or claim and may subject [SM 10000 Property] to a penalty of up to twice the amount of the security deposit," asserting SM 10000 Property was required to justify its conduct, and stating that "[i]t is up to the Trial Court, not Pecci, to sanction [SM 10000 Property] the statutory penalty if the Trial Court finds a bad faith retention or claim."

Like much of Pecci's briefing, this argument lacks meaningful legal analysis supported by citations to authority and to facts in the record that support her claim.  (See *In re M.V.*, *supra*, 109 Cal.App.5th at p. 518.)  More fundamentally, however, Pecci's argument does not acknowledge, let alone demonstrate error in, the trial court's ruling that it could not properly consider this argument because it was raised for the first time at trial when it should have been raised by cross-complaint and affirmative defense.  Accordingly, Pecci has failed to establish error.  "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.]  'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' "  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608--609.)

17

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


WILEY, J.


VIRAMONTES, J.